IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JARVIS DUNK MCDAVID #1989610 | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv087 |
| BRYAN COLLIER, et al. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Jarvis Dunk McDavid, an inmate of the Texas Department of Criminal Justice (TDCJ) proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 alleging that a violation of his right to access the courts had impacted his previous habeas action. The case was referred to the undersigned for findings of fact, conclusions of law, and recommendations for the disposition of the case.

## I. Relevant Procedural History and Alleged Facts

Plaintiff's original complaint was not on an approved form. (Dkt. #1.) For that and other reasons, the Court found the original complaint deficient and ordered Plaintiff to file an amended complaint, providing specific observations about certain deficiencies and how to address them:

> Plaintiff alleges that he was deprived of his right to access the courts because of a temporary lack of access to a prison law library, which allegedly kept him from filing an objection to a Report and Recommendation to deny relief in his separate habeas corpus case. (Dkt. #1 at 4.) He claims this violation led to the adoption of the Report and Recommendation and the denial of habeas relief. (*Id.*) But Plaintiff does not identify what resources he needed to prepare an objection or explain whether there was any process, other than visiting the library, for him to access those resources. He does not address whether he sought an extension of time in the habeas court to file his objections. Nor does he identify what portion(s) of the Report he found objectionable or detail what objection(s) he would have filed given the chance to do so, which is a fatal defect in his claim. *See Christopher v. Harbury*, 536 U.S. 403, 417–18 (2002) ("In sum, the right of a defendant in a backward-looking access suit to obtain early dismissal of a hopelessly incomplete claim for

1

relief coincides in this case with the obligation of the Judicial Branch to avoid deciding constitutional issues needlessly. For the sake of each, the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it."). Dismissal of an access-to-courts claim is appropriate where "[t]he District Court and the defendants [are] left to guess at the unstated cause of action supposed to have been lost." *Id.* at 418. In other words, it is not enough for Plaintiff to suggest that he would have filed some unspecified objection if he had library access. He "must describe the underlying claim well enough to show that its 'arguable nature . . . is more than hope.'" *Brewster v. Dretke*, 587 F.3d 764, 769 (5th Cir. 2009) (quoting *Christopher*, 536 U.S. at 416).

(Dkt. #6 at 1–2.) The Court also instructed Plaintiff that he must "identify the defendants responsible for those violations, [and] specify how each defendant personally violated his constitutional rights." (*Id.* at 2.)

In the amended complaint filed in response to that Order, Plaintiff alleges that he was transferred to Bradshaw State Jail on October 21, 2021. (Dkt. #11 at 4.) He alleges that Bradshaw allowed no access to legal materials from that date until December 27, 2021. (*Id.* at 4–5.) Specifically, he says he suffered an "absolute deprivation of access to all legal materials, such as, the Lexis Electronic Legal Research System, that provides Shepard's citations, and up to date cases that are not found on Self, including formats for motions to file an extension of time." (*Id.* at 4.) Plaintiff alleges that this lack of access to legal research materials "stopped [his] efforts to pursue extension of time to file objections, and to file objections with merit to Findings, Conclusions, and Recommendations of the United States Ma[g]istrate Judge" in his habeas corpus action under 28 U.S.C. § 2254. (*Id.* at 4–5.)

A prison grievance dated October 29, 2021, which is attached and incorporated into the amended complaint, identifies the Section 2254 action in question as *McDavid v. Wilson*, No. 3:17-1843, in the United States District Court for the Northern District of Texas, Dallas Division. (Dkt. #11-1 at 1.) Plaintiff asserted in the grievance that a recommendation had been entered in the

habeas case on October 15, 2021, to which he had fourteen days to file objections, but that he "ha[d] no access to a law library to [do] this" and "no access to research the legal cites the Judge has used." (*Id.*) The assistant warden's response to the grievance, dated November 1, 2021, said "Bradshaw State Jail is in the process of providing proper access to the Law Library as soon as possible." (*Id.* at 2.) In his administrative appeal of that grievance response, dated December 8, 2021, Plaintiff asserted that judgment had been entered against him in the habeas case on November 15, 2021, and he had been "injuried [sic] beyond repair." (*Id.* at 3.) The official response to that grievance stated that Lexis had been operable at Bradshaw since December 7, 2021, and that prison staff had provided Plaintiff with access to the law library and legal research materials. (*Id.* at 4.)

The Court may take judicial notice that the dates Plaintiff provides for the report and recommendation that his habeas petition be dismissed and for the order adopting that recommendation are correct. Findings, Conclusions, and Recommendation, *McDavid v. Wilson*, No. 3:17-cv-01843 (N.D. Tex. Oct. 15, 2021); Order, *id.* (N.D. Tex. Nov. 15, 2021).[1] The Court may also take judicial notice of the substance of that litigation, some of which must be incorporated here for necessary context for Plaintiff's current access-to-courts claims.

According to the magistrate judge's findings in the habeas case, Plaintiff was convicted in 2015 of aggravated assault with a deadly weapon upon his wife. Habeas Findings at 1. Plaintiff fled through the back door when police arrived at the scene, and police video introduced at trial depicted the victim's report that Plaintiff had held a knife to her throat and threatened that someone

---

[1] This Report will hereinafter refer to the magistrate judge's Findings, Conclusions, and Recommendations in the habeas case as the "Habeas Findings" and will reference any other relevant documents in that case by citation to their docket entry numbers in the "Habeas Docket."

was going to die. *Id.* at 12. She also displayed bruises on her face and reported that Plaintiff had struck her twice in the face, held her down, and pulled her hair. *Id.* at 1, 12.

One of Plaintiff's habeas claims was that admission of a 911 call placed by the victim's mother violated his confrontation rights under *Crawford v. Washington*, 541 U.S. 36 (2004), because the caller did not testify at trial. Habeas Findings at 4. Plaintiff had raised that claim on direct appeal in state court, where it was rejected on the basis that the statements by the victim's mother in the 911 call were not testimony against Plaintiff but simply made to prompt a response and investigation by law enforcement. *Id.* at 4–5. The magistrate judge recommended denial of this habeas claim:

> "[A] state defendant has no constitutional right to an errorless trial." *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984) (citing *Banks v. McGougan*, 717 F.2d 186, 190 (5th Cir. 1983)). Rather, on federal habeas review, a court is limited to determining whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine the state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *see also Hill v. Johnson*, 210 F.3d 481, 491 (5th Cir. 2000). When a petitioner alleges a trial court error, he is entitled to federal habeas relief only if the error had a substantial and injurious effect on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *see also Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983). A petitioner must show that "there is more than a mere reasonable probably that [the court's error] contributed to the verdict. It must have had a substantial effect or influence in determining the verdict." *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir. 1996).
>
> McDavid argues that the 911 call was hearsay evidence admitted in violation of the Confrontation Clause. Mem. 9-13 (ECF No. 3). "What is or is not hearsay evidence in a state court trial is governed by state law." *Gochicoa v. Johnson*, 118 F.3d 440, 445 (5th Cir. 1997) (citing *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994)). A federal habeas court "does not sit to review the mere admissibility of evidence under state law." *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998) (citing *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991)). A federal court "will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a 'denial of fundamental fairness' under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction." *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (internal citations omitted); *see also Little*, 162

F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.") (citing *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986)).

McDavid contends that there was no "immediate danger," and the emergency the 911 caller was calling about had passed. Mem. 11 (ECF No. 3). Similarly, he claims that there was "no indication the emergency was still ongoing." *Id*. McDavid concludes, "[t]his fails to establish the kind of ongoing and immediate threat necessary for the 911 caller to be exempt from confrontation." *Id*. However, the Waco Court of Appeals noted that "statements to the police—whether spontaneous or in response to preliminary questions—when police are called to a crime scene shortly after a crime are not testimonial because the interaction was not initiated by police, nor was the interaction formal or structured." *McDavid*, 2015 WL 7873639, at *3 (quoting *Ruth v. State*, 167 S.W.3d 560, 569 (Tex. App.—Houston [14th Dist.] 2005). Also, the Waco Court of Appeals noted that statements made during a 911 call are not given in response to structured police questioning or an eye to future legal proceedings, as they are initiated by a victim or witness to get police assistance. *Id*. (citing *Ruth*, 167 S.W.3d at 569). In pertinent part, the Waco Court of Appeals held:

> In this case, LaToya's mother called 911 to report that [McDavid] was assaulting her daughter and to summon emergency help. In doing so, LaToya's mother provided [the 911 dispatcher] with LaToya's address so that police could be dispatched to the house. [The 911 dispatcher] also testified that she determined from the call that an assault was in progress and that it was necessary to dispatch police to the house. The statements were initiated by LaToya's mother and were not given in response to structured police questioning or with an eye to future legal proceedings. Therefore, based on our review of the record, we conclude that the statements LaToya's mother made to [the dispatcher] constituted a non-testimonial call for help. And because the statements on the 911 call were not testimonial, we cannot say that [McDavid's] right of confrontation was implicated. Additionally, we cannot conclude that the trial court abused its discretion in admitting the 911 call into evidence.

*Id*. (internal citations omitted).

The Waco Court of Appeals did not err in finding that the 911 call did not violate McDavid's right to confront his accusers because it was a non-testimonial call for help. Moreover, McDavid has failed to demonstrate that the findings of Waco Court of Appeals were an unreasonable application of the Supreme Court's holding in *Crawford*. Therefore, McDavid's claim should be denied.

*Id.* at 6–9.

5

Plaintiff also claimed in his habeas case that his trial counsel had been ineffective by failing to object to comments by the prosecutor in closing argument that Plaintiff considered improper. *Id.* at 13. The magistrate judge summarized the allegedly objectionable comments:

> McDavid refers to the following arguments: "Ladies and gentleman of the jury, baby Jasmine is one of the reasons you should care. Because the next time we're here, ladies and gentleman of the jury, if you find the defendant not guilty, we'll have a murder on our hands and baby Jasmine won't have parents." *Id*. 14-15 (citing Reporter's R. Vol. IV at 16-17). "That's the kind of man who has no compuncion holding this deadly weapon to his wife's throat. We're just so lucky it's not a murder." *Id*. 15 (citing Reporter's R. Vol. IV at 19). "And then you got a whole bunch of stuff about lesser included offense of assault. What kind of message does that send? I think, ladies and gentleman of the jury, you just ignore that. Everything after Page 5, ignore it." *Id*. at 22 (citing Reporter's R. Vol. IV at 22). "So I ask you just to pass all through that . . . We need to protect baby Jasmine, make sure she still has a mother after this. We don't want to have another 12 individuals deciding a murder case." *Id*. at 23 (citing Reporter's R. Vol. IV at 23). Finally, McDavid refers to this argument:
>
> > You have been offered a lesser included offense of simple assault, a Class A Misdemeanor. I would submit to you that's the easy way out. It's easy just to go, okay, we know he hit her, let's move on. But you need to hold him accountable, not for what's easy, but for what he chose to do. We're free to make choices. We are not free from the consequences of those choices. You need to hold him accountable for what he did. You need to tell him that the citizens of this County don't tolerate that behavior. You need to go back there and you need to find him guilty of aggravated assault with a deadly weapon for holding that knife to her throat. Thank you.
>
> *Id*. (citing Reporter's R. Vol. IV at 50).

*Id.* at 14. This claim had also been denied in state court proceedings in which counsel testified by affidavit that he did not believe the prosecutor's arguments were improper. *Id.* at 16–17.

After summarizing the federal standard for effectiveness of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), *id.* at 15–16, the magistrate judge found that Plaintiff had not satisfied either the deficient performance prong or the prejudice prong:

> McDavid has failed to demonstrate that his attorney provided deficient performance. As set forth in his affidavit, Hudson believed that the prosecutor's arguments were not objectionable, and this was a reasonable conclusion. The decision not to make objections to opposing counsel's jury argument is a matter of

6

trial strategy. *See Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992) ("A decision not to object to a closing argument is a matter of trial strategy."); *see also Wiley v. Puckett*, 969 F.2d 86, 102 (5th Cir. 1992). "Since an objection may tend to emphasize a particular remark to an otherwise oblivious jury, the effect of objection may be more prejudicial than the original remarks." *Walker v. United States*, 433 F.2d 306, 307 (5th Cir. 1970); *see also Charles v. Thaler*, 629 F.3d 494, 502 (5th Cir. 2011) (explaining that there is "no constitutional rule that counsel must make, or not overlook, every possible objection to unfavorable testimony"). McDavid has failed to overcome the strong presumption in favor of finding that trial counsel rendered adequate assistance and that his actions were sound trial strategy. *See Strickland*, 466 U.S. at 689 (A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'") (citation omitted); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]") (quoting *Strickland*, 466 U.S. at 689); *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003) ("A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)). The prosecutor's statements were a plea for law enforcement in a case where the victim did not want to prosecute the crime and there was a child whose life was potentially in danger.

McDavid has also failed to demonstrate that he was prejudiced. Prejudice under *Strickland* requires the showing of a reasonable probability that but for counsel's deficiencies, the result of the trial would have been different. *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) ("To demonstrate prejudice under *Strickland*, [a petitioner] must show that counsel's performance was 'so serious as to deprive [him] of a fair trial, a trial whose result is reliable.'") (quoting *Strickland*, 466 U.S. at 687). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Law enforcement responded to a phone call that an assault was being committed, and upon arrival, they learned that an assault had occurred. McDavid ran out the back door when police arrived on the scene. McDavid has not demonstrated that his attorney's failure to object to the prosecutor's closing arguments ultimately impacted the jury's verdict.

For each of these reasons, McDavid's claim should be denied.

*Id.* at 17–19.

Plaintiff alleges that, but for his lack of access to legal materials during the period when he could have filed timely objections in his habeas case, he would have raised the following objections to those two portions of the magistrate judge's report:

The first objection to the Ma[g]istrate Judge's findings, conclusions, and recommendation would have argued that the Ma[g]istrate Judge's decision resulted in a decision that that [sic] was contrary to or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, in *Crawford v. Washington*. Specifically, the trial court allowed the prosecutor to use testimonial statements from a 911 phone call at trial from a witness who did not testify (Ma[g]istrate's report pgs. 4–9). The second objection to Ma[g]istrate's Judge's findings, conclusions, and recommendations would [have] argued that the Magistrate errs in speculating that McDavid's attorney did not provide ineffective assistance of counsel by failing to object to the prosecutorial misconduct which was an incurable jury argument. The effect of a presumption in a jury argument is determined by the way in which a reasonable juror could have interpred [sic] it, not by a state court's interpretion [sic] of its legal import. A conclusive presumption conflicts with the overriding presumption of innocence, with which the law endows the accused and which extends to every element of the crime, and they "invade the fact finding function,["] which in a criminal case the law assigns to the jury. The presumption of a future murder announced to McDavid's jury may well have had exactly these consequences. If the jury interpreted the presumption in this manner, it could have concluded that upon the prosecutor's argument, the presumption of a future murder would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. (Magistrate's report pgs. 13–19).

(Dkt. #11 at 5–7.)

Plaintiff sues several executives of TDCJ and of Management and Training Corporation (MTC), the Utah-based private prison contractor that allegedly manages Bradshaw. (Dkt. #11 at 3.) He seeks declaratory and injunctive relief in addition to punitive and compensatory damages totaling more than $300,000. (*Id.* at 4, 8–9.)

## II. Legal Standards and Preliminary Screening

Plaintiff is a prisoner seeking redress from an officer or employee of a governmental entity, and he is proceeding *in forma pauperis*, so his Amended Complaint is subject to preliminary screening pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2). Those statutes direct *sua sponte* dismissal of a complaint—or any portion thereof—if the Court finds it frivolous or malicious, if it

8

fails to state a claim upon which relief can be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it lacks an arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). The Fifth Circuit has held that a complaint lacks an arguable basis in fact when "the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Id*. (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (internal quotation marks omitted)). In other words, during the initial screening under Section 1915A, a court may determine that a prisoner's complaint is frivolous if it rests upon delusional scenarios or baseless facts—and dismiss the complaint. *See Henry v. Kerr County, Texas*, No. SA-16-CV-284-DAE (PMA), 2016 WL 2344231, at *3 (W.D. Tex. May 2, 2016) ("A court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, fanciful, fantastic, delusional, or otherwise rise to the level of the irrational or the wholly incredible, regardless of whether there are judicially noticeable facts available to contradict them.") (citing *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)).

Moreover, a complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010). This plausibility standard is not akin to a probability standard; rather, the

9

plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556.

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414 (5th Cir. 2012) (unpublished) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id.*

## III. Discussion and Analysis

The law does not provide inmates with "an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Accordingly, an inmate claiming that some obstacle to his legal research violated his First Amendment right to access the courts "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* To state a claim under this standard, the inmate must be able to point to some actual injury to his litigation:

> He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Id.* The nature of the underlying litigation is also material to this analysis. "[T]he inmate must show that a nonfrivolous, arguable claim he wished to bring has been lost or rejected due to the deficiency or that the deficiency is currently preventing his presentation of such a claim" and "[t]he

underlying claim must be described well enough to apply the frivolity test and to show that its 'arguable nature . . . is more than hope.'" *Sanchez v. Stephens*, 689 F. App'x 797, 799 (5th Cir. 2017) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

The Amended Complaint in this case does not satisfy that standard. When an inmate asserts an access-to-courts claim arising from the dismissal of a habeas action, he must allege facts that would demonstrate that the dismissal "resulted from" the defendants' actions. *Pruitt v. Sparkman*, 98 F. App'x 281, 282 (5th Cir. 2004) ("Pruitt has not shown that the denial of his 28 U.S.C. § 2254 application as untimely resulted from any action by the named defendants."). But, even assuming that Plaintiff had no access to any legal research materials during his window to object to the report and recommendation in his habeas case, he cannot demonstrate that the lack of access injured his ability to assert any viable objections.

First, Plaintiff has not alleged any plausible reason he could not have obtained an extension of time to file his objections. He vaguely alleges that he lacked access to "formats for motions to file an extension of time," (Dkt. #11 at 4), but he has demonstrated his ability, in both the habeas case and this case, to seek relief from the courts without the use of official forms. (*See* Dkt. ##1, 10, 12); Habeas Docket ##3, 4, 11, 16, 26–28, 31, 32, 34. He had also been served with two motions for extension by the respondent in the habeas case, both of which were granted, as is routine practice for district courts in ordinary circumstances. Habeas Docket ##13, 14, 21, 22. Documentation attached to the amended complaint indicates that Lexis access was available at Bradshaw by December 7, 2021, just weeks after the habeas judgment was entered, and Plaintiff acknowledges that his research capabilities were restored by December 27, 2021. Plaintiff's grievance records establish that he knew he had a limited time to file his habeas objections and that he had access to pen and paper. Thus, Plaintiff was indisputably aware of the simplicity and

11

likelihood of obtaining extensions of time and had the skill and means so. He offers no plausible explanation for his failure to write the habeas court and seek an extension of time to object.

Second, the objections Plaintiff now says he would have filed did not require any legal research to produce. The only reference to case law in his proposed objections, which are quoted in full above, is to *Crawford v. Washington*, without citation, which Plaintiff had already raised in his habeas petition and in his reply to the respondent's answer. Habeas Docket ##1, 26. His proposed objections do not include any specific details about that case or any other. They simply register his disagreement with magistrate judge's findings and rehash his position already set forth in his petition and reply. Habeas Docket ##1, 26. Petitioner cannot possibly demonstrate that a lack of access to legal research materials prevented him from drafting and submitting these objections.

And third, these objections would not have been meritorious regardless of the amount of legal research that went into preparing them. The district court reviewing the magistrate judge's findings and conclusions determined that they were correct because they were. Habeas Docket #35. The court found, in fact, that they were not even debatable among reasonable jurists. *Id.* Both habeas claims at issue in this case had been considered and rejected on the merits in state court. Accordingly, under the Antiterrorism and Effective Death Penalty Act, federal review of those rulings is "highly deferential" and cannot result in a grant of habeas relief unless the state court's decision is so objectively unreasonable as to be beyond fairminded disagreement. *Harrington v. Richter*, 562 U.S. 86, 98, 101 (2011). In other words, even a finding that the state court's rulings were merely wrong would not be enough to merit habeas relief. And even when a federal court finds constitutional error in a habeas petitioner's trial, habeas relief is not proper unless the error "had substantial and injurious effect or influence in determining the jury's verdict." *Atkins v.*

*Hooper*, 979 F.3d 1035, 1049 (5th Cir. 2020), *cert. denied*, 142 S. Ct. 481 (2021) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). In light of the clear evidence of Plaintiff's guilt, based on his fleeing the scene and the observations of law enforcement officers upon their arrival, Plaintiff could not satisfy that standard in his habeas case.

Thus, Plaintiff's proposed objections would have been frivolous under the relevant standards. For the purposes of this case, they represent no more than Plaintiff's subjective "hope" for a different outcome in Plaintiff's habeas case, which is not enough to support a claim for denial of access to courts. *Sanchez v. Stephens*, 689 F. App'x 797, 799 (5th Cir. 2017).

And finally, none of the Defendants named in the amended complaint run the Bradshaw library or even work on-site at the Bradshaw State Jail. Despite the Court's admonition to "identify the defendants responsible for [the alleged] violations, [and] specify how each defendant personally violated his constitutional rights," (Dkt. #6 at 2), all four executives he sues are alleged simply to be "legally responsible" for operations throughout the TDCJ and Bradshaw State Jail. (Dkt. #11 at 7–8.) Plaintiff does not allege that any of the Defendants was personally involved in the delay in providing access to legal research at Bradshaw or even had any contemporaneous knowledge of that delay or its impact on him.

Plaintiff presumably sues these Defendants because he believes their high-ranking positions make them liable as supervisors for anything that happens in prison. But lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. *Williams v. Luna*, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable under Section 1983 only if he is personally involved in a constitutional deprivation, a causal connection exists between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials

13

implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987). Plaintiff does not allege any facts that would support liability under any of these theories in this case.

## IV. Conclusion

For the reasons set forth above, Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted against any Defendant. Dismissal is appropriate where Plaintiff has already been permitted to amend his complaint but still fails to state a viable claim. *See Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) (holding that "once given adequate opportunity, even a *pro se* complaint must contain specific facts supporting its conclusions"); *Garcia v. City of Lubbock, Texas*, 487 F. Supp. 3d 555, 566 (N.D. Tex. 2020) (dismissing where inmate had "already amended his complaint once" and been afforded "an opportunity to further flesh out his claims").

## RECOMMENDATION

Accordingly, the undersigned recommends that this action be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2) for failure to state a claim upon which relief can be granted.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and

legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 3rd day of October, 2022.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE